v. Department of Education. Mr. Bellantoni, am I pronouncing that right? Yes, sir. And Mr. Bellantoni, you have reserved two minutes for rebuttal. So that gives you eight minutes to go. May I? Yeah. Good morning. May it please the court. My name is Rory Bellantoni. I represent the plaintiff appellants in this matter. This matter involves a challenge to an IEP of a very young student. And I just want to say at the beginning that this student passed away in October of 2021. This student attended a private school. The private school was IHOPE. Then switched to I-Brain and went back to IHOPE when he passed away. The parents brought a challenge to the student's IEP for the 2019-2020 school year. At the IHO level, the Department of Education prevailed and the parents took an appeal. The SRO, the state review officer, found that the finding that the school district provided the student with a FAPE was inappropriate, reversed that finding. Found that the private school, I-Brain, was an appropriate unilateral placement. But found that the equities, or the balancing of the equities, weighed against reimbursement. When you look at the record, and the tuition, transportation, and nursing costs. Over $500,000 in costs that the parents incurred. Excuse me, I'm going to interrupt for just a second. Am I right in understanding that the IHO, Mr. Keever, also found that the equities weighed against your clients? And then the SRO, Harrington, endorsed that decision in greater detail. Is that right? Yes. But may I, the IHO, it was more of a commentary, because after the IHO found that the district provided a FAPE, the IHO skipped over the appropriateness, prong two, and said, but if I had to decide prong three, I found that the equities wouldn't weigh in favor of the parents. The problem with that is the case law that's been developed allows an administrative officer or the court to reduce or deny relief where the parent obstructs the creation of an IEP. Right, and that's what the SRO and Judge Torres found, right? Well, yes and no. The SRO never said the parent prevented the school district from creating the IEP. The SRO said the parent contributed to the inappropriateness of the IEP. That the meeting that the parent missed, there was a lot of emphasis on the last meeting the parent missed. However, nothing in the IDEA requires a parent to show up at a meeting. But wait, can I just call your attention to a case that was decided, I guess, at the end of last year involving, it was Neskey versus DOE, so same defendant. And in that case, we noted the existence of, quote, a broader campaign to disrupt the IEP creation process, to support the migration of students from I-Brain, which I hope to I-Brain, which was orchestrated by the founder of I-Brain and his related law firm. And that case went on to find that the signature tactic was involving insisting that a physician be present at the IEP meetings, but then failing to attend themselves, which was evidently a delaying tactic designed to stymie the DOE's efforts to create IEPs for the students. So that's, I guess I'm trying to figure out what's different in this case than was in the Neskey case. In the first instance, there was no evidence of that in this record. Nobody discussed any concerted effort to prevent the creation of an IEP. I believe Neskey was the 2018-19 school year when the students initially transferred from I-Hope to I-Brain. There were pendency issues. I wasn't representing plaintiffs at the time. The representation was that I-Brain should be a pendency placement based on substantial similarity. That was rejected in DePaulino. This is the 2019-2020 school year, and neither the IHO here or the SRO speaks to that. In fact, the parents here were separated. The father, in footnote, there's a footnote one in the FOFD, says the father attended a hearing that the mother did not. So the father was present. The father wanted to interact with the district. I go back to, or let me go back to the beginning then. In January, there was an evaluation that was scheduled that the parent missed. The SRO on page, it's in the appendix A56, said that the district social worker testified, to the best of her knowledge, that the March evaluation that is talked about throughout these orders, the DOE gave the parent an opportunity to show up on either March 10th or March, I believe it was March 10th or 16th. The parents chose March 10th to produce the child for the evaluations, but the DOE scheduled them for March 9th. March 9th, that's why the parent missed that evaluation. Is that, can I just ask, I don't know if this is in the record, did the parent show up on March 10th? I don't believe so, because there was communication on March 9th. I believe there was communication on March 9th. But as far as missing an evaluation, the parent didn't miss the evaluation. Even if the parent had showed up, there was nobody there to evaluate the child. Well, I guess my question was geared more toward the idea that the missing of the March 9th appointment, the idea of that being completely inadvertent, if in fact there were efforts to attend on March 10th instead, it would support that more than. I don't know the answer to that as I stand here. I know that the parent chose the 10th, it was one of the two choices that were given. Then we get to the May, initially May 10th meeting. The parent got an email on May 8th informing her that the meeting was on May 10th. A letter was attached that purportedly went out on April 23rd, which the parent did not receive. The parent was not able to attend that meeting. April 23rd is when the May 10th meeting was scheduled, right? It was scheduled. May 23rd is when your client was notified by letter that the CSE meeting is going to take place on May 10th. On May 8th, on the eve of that meeting, is when they sent an email that had various evaluations and reminding that her assistance was necessary to obtain the current reports from I-RAID. And then on May 9th, her advocate basically said, she didn't get that letter, it's not available. And so then it got pushed. And then, okay, so then it gets rescheduled for May 20th. And then on May 20th, again, there's a run up to that meeting. And on May 20th, your client doesn't show up, right? Yes, except my client did not get the April 23rd letter. She got that letter for the first time on May 8th in an email for a meeting on May 10th. But your Honor- What was the reason for not showing up for the May 20th CSE meeting? The May 20th? Yep. The client and the advocate at the time felt that the child would benefit from information that was forthcoming. The parents signed an authorization- She claims, according to what's in the record, that the school told her that the meeting had been canceled. Well, in another part of the, that may be, Your Honor, but there was also- Respond to a voicemail saying the meeting's going forward. There was also an issue, and I'm not saying it's right, but I believe there was also an issue that the attorney at the time or the parent had signed medical records, but hadn't signed or gotten transportation records and wanted to hold off on sending everything to the DOE until everything was received. But let's just for a minute look at what the parent did do. The parent did sign authorizations. The school was given the authorization to produce, I rank, educational records, and there was a problem with the school producing those records, yes. The DOE representative was at that school in March for an observation of the child in the child's classroom at the private school. Now, not only did the social worker have an opportunity to observe the child, the social worker had an opportunity to speak to teachers at the school, request any records that they felt they needed directly from the school, because the parent never withheld permission for I-Brain to provide the district with the records the parent needed. But never provided them herself either, even though she had them. That's true, but she didn't have the records. I mean, it's not like she got them from I-Brain and refused to turn them over to the city. She signed them- I mean, in the interest of time. I mean, so the standard that we're applying here is abuse of discretion. Yes. And so it's whether or not the district court abused its discretion in denying the relief sought here as an equitable matter, correct? Yes, and as far as- So what is the abuse of discretion that Judge Torres engaged in here? Well, first, the judge did not need to defer to the administrative officers on a balancing of the equities. That's a legal question. Second, the refusal to grant any tuition reimbursement, transportation, nursing altogether is disproportionate to what the parent did. The parent did not prevent the DOE from creating an IEP. The DOE did not argue that at the administrative hearing level. They didn't walk into the hearing and say, we couldn't prepare an IEP because we never saw the child. We had no records. We couldn't go to the school. They walked into the hearing and defended their IEP. The hearing officer, impartial hearing officer, found that they provided a fee, that the IEP is the- And the hearing officer and the SRO both concluded that your client had obstructed the IEP process, right? Had impeded is the word they used. And again, I say that impeding is not the same as obstructing. What's the difference? Well, if they made it harder to do their job, there's a big difference between making it harder to do their job and preventing them from doing it all together. But isn't it even if they're making it, okay, they didn't prevent the process all together, but even making it harder for them to do a proper one. Why isn't that a basis for saying, look, this was unreasonable behavior that should count against getting a reimbursement? To deny relief altogether? I would agree, perhaps, if she made it harder, it could be a proportionate reduction of tuition, nursing, and related services. But the parent missed one meeting, and the Department of Education failed to provide this child a free, appropriate public education for 200 and some odd days in that school year. The balancing, to have the same decision on the equities. When one officer finds a fee was provided and another doesn't, this court has held that you have to look at what both sides did in this adversarial proceeding. But in Nesca, the same result took place, right? The district judge again denied any reimbursement. Correct. Even though there was no dispute there that a FAPE was not provided and that I-Brain was an acceptable, probably better than acceptable facility. Right, but if the IHO came to that conclusion where the district provided a FAPE. Now the SRO reverses that decision and says, you didn't provide a FAPE. Doesn't that require a different look at the equities? But say you didn't provide a FAPE because the parent didn't cooperate in the process that would have perhaps enabled them to create a FAPE. But he never explained that conclusion, the SRO. The SRO didn't say, if they had a certain report, because they had a hearing, and then that report could have been introduced into the evidence. But the facts are not in dispute, right? I mean, I just read you the chronology, you're not disputing it. Well, the fact's that even if they had- Interim. What I'm disputing is that there's no evidence in the record or otherwise that even if they had whatever information they were looking for, the department would have developed a different IEP for this student. This is the same IEP they developed year after year, 2017, 18, 18, 19, 19, 20, until the student passes away. Same ratio of students, same services, the same time frame of the services. It's one thing to say that if they had gotten a report that I'm looking at now, certainly they would have provided different services for the child. But the SRO goes through a very lengthy and detailed timeline analysis, and then says, given the foregoing, I find that the parents obstructed the process. But does it say how? And again, the parent is not required, not required anywhere to go to these meetings. The IDPA- Your client demanded that she be at these meetings. Your client demanded not that she be at the meeting, that physicians be at the meeting, that psychiatrists or psychologists be at the meeting, that representatives of the school be at the meeting. So, I mean, the demand, and this is sort of consistent with what's in Nesca, which is what led that court to conclude it was a delaying tactic. Because when the doctors did show up, and the doctors who have lots of other obligations and other hearings to attend, when they do show up, that's when the patient's parent wouldn't show up. But there was no evidence of that in this record, and the other case showed the prejudice. There's enough similarities, I think, to lead one to conclude that this is part of a delaying tactic designed to stymie the DOE's efforts to create IEPs for the students. I mean, you're not running away from that. You're the lawyer in that case. I was not initially, when that case, the firm was, I was not personally, but- You argued the appeal, I mean. Yes, yes, but the difference is the IHO didn't see any of that in this record. The SRO did not see any of that, what was referred to in Nesca, in this record. The DOE didn't argue any of that. To draw the conclusion from Nesca, different student, different circumstances, different school year, would be prejudicial to my client. These two parents were divorced. The father made every effort to try to attempt to engage. The DOE, for whatever reason, had a preference to deal with one parent. So the father shows up at a meeting, at the hearing, he's not credited with showing up at the hearing. The mother, however, doesn't show up, and we have to then punish the mother for not showing up. And yes- Again, it's the standards of abusive discretion on equitable balancing. And so you're saying that Judge Torres had an obligation to assess whether there might have been a fape after the fact with full information that was provided later or not provided at all. Well, based on the record, and there are a lot of things that come into the record that happen afterward. And what I'm saying is that she wasn't, I'm sorry. No, go ahead. She wasn't obligated necessarily, but again, the SRO did not do almost a de novo review of the equities. The SRO reverses the IHO's finding that the district provided fape. And they did in a way, a circumstance where they denied the child a fape with the actions of the mother. I find it difficult to see how they would be equal, where the district did everything right, and then apparently something wrong, and it comes out in favor of the district. Then the district does everything wrong, and that prejudices the mother as well. You gotta- I mean, we're way, way over. I apologize. No, that's all right. I mean, you're responding to questions, but you've got two minutes for rebuttals. So let's hear now from Mr. Gerber. DeSilvia, DeSilvia. What time? Am I looking at the wrong one? I'm sorry, I just rearranged my things. Mr. DeSilvia. No worries. We get the little cheat sheets and I misordered them. Sorry. No worries. Good morning. May it please the court, Lorenzo DeSilvia on behalf of the New York City Department of Education. So as the recent affirmance in Nesky shows, when, as here, the IHO and the SRO each independently conclude that a parent not just didn't genuinely participate in the IEP creation process, but in fact actively impeded it, the district court is well within its rights to affirm the denial of reimbursement on equitable grounds. With that said, I just want to correct a few misstatements my adversary made. In terms of the question about deference, first of all, this court in CL, this court in Nesky, we are giving deference even on prong three. We, meaning the Department of Education? Excuse me, the circuit. The circuit has not been drawing a fine line between prongs one and two and prong three. And there's an extra reason for that in this case, which is if you look at the SRO's decision, the SRO actually does link the denial of FAPE to the actions of the parent, because the denial of FAPE really turned on, I believe, between the 30-minute and the 60-minute sessions. And the SRO specifically said, well, it's not clear that they ever got information that you were providing 60-minute sessions to the child at I-Brain, which could have put them on notice of the need to justify the difference between those two things. So that's another reason why deference can and should be afforded here. And certainly, Your Honor's point, Judge Sullivan, about the similar tactics. I think the district court was permitted to make the inference that it did, that these are similar tactics across years. And in response to your question, Judge Lee, there- Well, I mean, I'm not sure- Yes, Your Honor. I'm not sure that Judge Torres was fully aware of the Nesky case. I mean, the Nesky case came out just less than two months ago. That's correct. So, I mean, she didn't make a finding that this was part of a coordinated scheme, right? That's right. So we don't have that particular finding here. But I just want to say it wasn't one meeting missed. It was three meetings. It was the social history meeting, it was the psychoeducational evaluation, and it was the IEP meeting. So that distinguishes from Nesky already. Nesky only involved one missed meeting. And I don't believe, in response to your question, Judge Lee, that there is any information in the record that the parent did show up on the 10th. And certainly there's no information in the record that she tried to reschedule it. And we see a similar sequence of events when it came time for the May 20th IEP meeting. She actually answered the phone when officials at the CSE meeting called her, but then didn't answer again when they called back. She said something about an email from the school canceling the meeting, but the SRO, I believe, specifically notes that there is no evidence in the record of any email ever being produced. We don't hear about this again. And just in response to the atmospheric point that the district court or the SRO even, you know, should have weighed, you know, the district's actions as against the parent's action, the fact of the matter is the IHO, the SRO, and the district court each did that. All of these facts were necessarily before each of those decision makers, because as you point out, Judge Sullivan, this is a series of undisputed events based on contemporaneous documentary evidence that the DOE keeps in every case and had in this case. So under the circumstances, they had all of the necessary facts before them. They did necessarily consider them. They determined that, you know, the February reference in one of three meetings clearly scheduling the IEP for the 20th, the fact that they said clearly in at least two notices we're going to have this psychoeducational evaluation on the 9th, but she didn't show up, and the social history meeting, which was clearly scheduled, I think, at least three weeks in advance, and she didn't show up for that. Under these circumstances, there was certainly no abuse of discretion here, and each of the three independent actors reached the correct conclusion that on this record, we don't just have someone who was saying, look, I'm not going to turn over information. I'm a busy parent and don't have time for this. This is someone saying, look, do not go forward without me. Do not go forward without these documents that I had, and made no efforts to attend the meetings or provide the documents. There was no abuse of discretion this court should affirm. Thank you. Mr. Palantone, you have two minutes for rebuttal. There was some mention that the parents, with respect to the related services, because they didn't turn over evaluations, information prevented the DOE from knowing that the child was getting 60 minute services at I-Brain versus 30 minute. Except the social worker went to I-Brain for the day and observed those 60 minute classes. More than one. One after the other after the other. The child had an extended school day. So the DOE was aware that the child was getting 60 minute services, and yet still developed the 30 minute service plan in the IEP. Again, and if the social worker had any questions, the social worker could have asked when she was at I-Brain. As far as missing three meetings, the psychoeducational and social evaluations were scheduled for the same day. So if the parent misses one day, the parent misses those two evaluations. And as far as the parent didn't respond to the meeting for the 9th of March 9th, it got noticed and didn't show up. Again, there was no notice. The DOE and the SRO, the SRO recounts this, but doesn't analyze it in any way, shape, or form. This is a nice footnote about the DOE giving the parent a choice between the 10th and the 16th. The parent chooses the 10th, but the meeting's held on the 9th, and the SRO moves on. And yet, the parent somehow is held responsible for missing that meeting. And it would be nice if my client had rescheduled the meeting, but it's not up to her. The IDEA and all the case law that's been developed, that I cite in the brief, puts that responsibility on the DOE. The parent has the right to participate, but not the obligation. And that's- But your client insisted that no meeting take place without her being present, right? That is correct. Okay, and then missed two meetings in May, right? I would say missed one meeting in May, but two were scheduled, the May 10th, Your Honor, yes. And the May 20th, but didn't have sufficient notice for the May 8th meeting. Then, Your Honor, there's an issue that the DOE said that the meeting had to take place May 20th and no later in their papers. But my client had received a notice that said that the IEP meeting had to take place back in February of 2019. Mistake or not, that's the notice that my client got in May, that the time that have had the IEP meeting already passed. I would just say, Your Honor, given that this case is different than Nesky and the others, given that- That's pretty similar to me. Well, it's different in that nobody has raised this issue of a concerted effort. And the DOE, Your Honor, raises it every chance they get, whether there's any evidence that that happened. Nesky wasn't a one-off. That was raised in almost every hearing in the 2018-19, relative to the 2018-19 school year. But not subsequently. And there was no evidence of that in this record, and I think it would be inappropriate to consider that elsewhere. But I look at the appendix 859, I would just ask, Your Honor, to look at the language there again. The SRO, based on the above, the parent's actions impeded the process leading up to the meeting and prevented the district from having recent evaluative information. Didn't say prevented them from creating the IEP. In fact, it goes on to say, as the lack of evaluative information available to the May 2019 CSE contributed to a finding of a denial of fate in this matter. The parent's actions in withholding that information from the district, both in not producing the student and the witnesses, was unreasonable. Doesn't say, again, that it prevented them from creating an IEP. The closest we get to that language is in the last sentence, where the SRO says, in essence, the parents prevented the district from meeting its obligations under the IDEA. Well, that could be contributing to denial of a fate. But the SRO, I should have said her, Ms. Harrington, never comes out and could have simply said the parent's behavior prevented, obstructed, created a situation where the DOE could not complete an IEP. She was applying the statutory standard, which calls for a determination of reasonableness or unreasonableness, wasn't she? I'm sorry? The statutory standard is unreasonableness, isn't it? And so I think that she was, as this was explaining and summarizing the basis for her finding, that the parent's behavior was unreasonable, and therefore that she had the discretion to deny the IAEA release. I would say it is not, the standard is not just unreasonable during the proceedings. If the parents acted in an unreasonable way, again, that prevented them from, a parent shouldn't, and I agree, shouldn't, ever be able to stymie the process and then say, I didn't get my IEP. Well, if you prevented that from happening actively, then you shouldn't get reimbursement. But this case is different than the others. We're talking about two meetings at most, and one of them was misscheduled by the DOE, and the April 20th meeting, again. What would have been different if the parent showed up? The parent provided orally the district with all the information they needed. They knew where the child was. They had permission to speak to any of the teachers at I-Rain. Again, they went there. They would have gotten more information from teachers at I-Rain on the day they visited the school than they would have gotten from the mother. There wouldn't have been anything else the mother could have contributed to unless she brought records with her, and I-Rain, and a transportation provider, and the doctor was supposed to provide those directly to the school. All right, well, we are way over, but we will reserve decision. Thank you very much, both of you. Thank you.